ESTATE OF ELIJAH MUHAMMAD, DECEASED, EMANUEL MUHAMMAD, ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Muhammad v. Commissioner
Docket Nos. 11978-79, 12033-79
United States Tax Court
T.C. Memo 1990-211; 1990 Tax Ct. Memo LEXIS 230; 59 T.C.M. (CCH) 478; T.C.M. (RIA) 90211; April 25, 1990, Filed *230 Decision will be entered under Rule 155. Rufus Cook, for the petitioner. William T. Derick, for the respondent. FAY, Judge. FAY
*689 MEMORANDUM FINDINGS OF FACT AND OPINION In docket No. 12033-79, respondent determined deficiencies in and additions to Federal gift taxes due from petitioner as follows: Quarter
Addition to Tax
Ending
Deficiency
Section 6651(a)(1) [1]
9/30/74
$ 130,800.00
$ 32,700.00
3/31/75
52,147.50
13,036.88 In docket No. 11978-79, respondent determined a deficiency in petitioner's estate taxes in the amount of $ 667,386.04. After concessions, the issue for decision is whether certain properties were transferred by Elijah Muhammad to four of his descendants as gifts or as compensation for the performance of services. If the transfers were gifts, we must also decide: (1) whether petitioner is subject to the addition to tax under section 6651(a)(1) for failing to file quarterly gift tax returns; *231 and (2) whether Elijah Muhammad made the gifts in contemplation of death. FINDINGS OF FACT Elijah Muhammad, decedent, died on February 25, 1975. Petitioner is the Estate of Elijah Muhammad. At the time the petitions in these cases were filed, Herbert Muhammad, petitioner's administrator, had his legal residence in Chicago, Illinois. After the petitions in these cases were filed, but before the amended petitions were filed, Emanuel Muhammad replaced Herbert Muhammad as petitioner's administrator. At the time the amended petitions in these cases were filed, Emanuel Muhammad's legal residence was in Chicago, Illinois, Decedent was the leader of a Chicago-based religious organization known as the Nation of Islam (the Nation). The Nation was founded by Master Fard Muhammad and consisted of the 22 million people of African descent living in North America. Fard Muhammad's followers believed he was Allah, i.e., God, personified. The followers of decedent believe he was anointed by Fard Muhammad to be the messenger of Allah. To decedent, the Nation was more than a religious organization; it was a way of life. Decedent encouraged his followers to be industrious people, not dependent *232 upon the society in which they lived. The nucleus of the Nation's religious activities was Muhammad's Temple No. 2 (the Temple), an unincorporated religious association responsible for the Nation's affairs. Decedent's works and ministries were funded by profits from businesses owned by decedent and by the Temple. In addition, decedent was financed by contributions from his followers, members of the Nation. The Nation asked its members to contribute to the works of the Temple and to decedent. One of the treasuries to which the Nation's members could contribute was the "No. 2 Poor Fund" which was described in the Nation's brochures as follows: No. 2 Poor: This treasury is for the use of our leader and teacher [decedent]. With it the Honorable Elijah Muhammad sees to it that the poor and needy of our Nation are looked after. This treasury is also designed to see to it that our leader and teacher himself and his family want for nothing. The generosity of our leader and teacher himself is so well known that stories are told about his gifts throughout the Nation. For a man who has given his very soul and health to see to it that his people hear the truth, we cannot give too much. Contributions *233 to the "No. 2 Poor Fund" treasury were actually personal gifts to decedent. Decedent's affiliation with the Nation began in 1933. Throughout his association with the Nation, decedent believed his life to be in danger. Threats to decedent's life came from: (1) power struggles within the leadership of the Nation; (2) the nature of his teachings; and (3) allegations of his involvement in the assassination of Malcolm X, a nationally recognized civil rights leader of the 1960s. Because of these threats, decedent was extremely security conscious. Protection of decedent's life was provided in part by volunteers of the Nation who were referred to as the Fruit of Islam (the FOI). The FOI consisted of the males of the Nation. The FOI, including its leaders, provided protection *690 for decedent not for payment but out of love, loyalty, and devotion, which are fibers of the Nation's religion. It would have been a deep and serious insult to any member of the FOI to offer him payment for his services protecting decedent. The Supreme Captain of the FOI was decedent's son-in-law, Raymond Sharrieff. The second highest official of the FOI was Elijah Muhammad, Jr., decedent's son. His title was *234 the Assistant Supreme Captain. Sultan Muhammad, decedent's grandson, was the third-ranking member of the FOI. In addition, Sultan Muhammad was the airline pilot of decedent's personal jet plane. Along with other members of the FOI, these three persons provided decedent almost constant personal security. Decedent's home was located on the northeast corner of South Woodlawn and East 49th Streets in Chicago. Near decedent's home prior to 1967, on the northwest corner of South Woodlawn Street and East 49th Street, there was vacant, wooded property. Because this property was so near his home and the foliage on the land would provide cover to potential assassins, decedent believed it presented a threat to his security. For this reason, decedent acquired the property and cleared it of trees in preparation for development. Between 1970 and 1971, decedent had four residences built on the land. The addresses of these houses are 1136, 1144, 1150, and 1158 East 49th Street, Chicago, Illinois. These are the properties in issue. Decedent allowed the leadership of the FOI to reside in the four houses on East 49th Street as construction of those houses was completed. Specifically, decedent *235 allowed the Supreme Captain of the FOI, Raymond Sharrieff, and his wife, Ethel Sharrieff, to reside in the house located at 1158 East 49th Street. Ethel Sharrieff was decedent's daughter and head of the Nation's religious women's organizations, the Muslim Girls' Training and the General Civilization Classes. Decedent allowed the Assistant Supreme Captain of the FOI and his wife, Elijah and Patricia Ann Muhammad, Jr., to reside in the house located at 1150 East 49th Street. Decedent allowed Sultan Muhammad to reside in the house located at 1144 East 49th Street. Decedent allowed Herbert Muhammad and his wife, Antonia Muhammad, to reside in the fourth house, located at 1136 East 49th Street. Herbert Muhammad is decedent's son, and was, since October 1966, the business manager of Muhammad Ali, the former heavyweight boxing champion of the world. Decedent's wife, Clara Muhammad, died in 1972. After his wife died, decedent's physical condition deteriorated quickly and steadily. From 1972 until his death on February 25, 1975, decedent was attended to by private nurses. Decedent suffered from chronic asthmatic bronchitis beginning in 1959. His bronchitis would sometimes require decedent *236 to receive oxygen directly from a tank kept in his bedroom. Further, approximately two years prior to his death on February 25, 1975, decedent was diagnosed as having high blood pressure and diabetes. Decedent resisted taking medications of any kind, and would do so only if he truly believed it was necessary. Decedent attempted to treat his ailments by fasting, eating only vinegar and honey. Fasting did not alleviate decedent's condition and decedent was forced to begin taking daily insulin injections, medication for high blood pressure, and medication for chronic asthmatic bronchitis. The private nurses attended to decedent's routine needs, not of a personal nature -- e.g., giving him his medication, taking his temperature, or informing decedent's doctor if decedent's condition worsened. Decedent's needs of a more personal nature were attended to by two of his grandsons, one of whom was Sultan Muhammad. When his condition occasionally worsened and decedent could not care for himself without assistance, decedent's two grandsons would assist decedent by lifting him out of bed, bathing him, and helping him use the bathroom. On July 12, 1974, less than seven months prior to his *237 death, decedent transferred the real property located at 1136, 1150, and 1158 East 49th Street, respectively, to his son and daughter-in-law, Herbert and Antonia Muhammad, his other son and daughter-in-law, Elijah and Patricia Ann Muhammad, Jr., and to his son-in-law and daughter, Raymond and Ethel Sharrieff. On January 10, 1975, decedent transferred the real property located at 1144 East 49th Street to his grandson, Sultan Muhammad. On the dates each of these four pieces of property were transferred, each had a fair market value of $ 120,000. Gift tax returns were not filed by, or on behalf of, decedent for the quarters ending September 30, 1974, and March 31, 1975. Decedent died on February 25, 1975, of congestive heart failure. His reported gross estate was in the amount of $ 363,422.82, which amount did not include, among other things, the value of the properties in issue. Decedent was survived by 21 children; eight from his marriage to Clara Muhammad, 13 from other unions. OPINION The first issue for decision is whether the properties decedent transferred to some of his descendants were gifts or compensation for the performance of past and future personal services. Petitioner *238 bears the burden of proof on all issues presented. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). *691 Section 2501(a) imposes an excise tax upon gifts made during a calendar quarter. For purposes of this section, a gift is any transfer of property not compensated by full and adequate consideration. Sec. 2512(b); sec. 25.2512-1, Gift Tax Regs. For gift taxes to be imposed it is not essential for the transferor's intent to be donative. Sec. 25.2511-1(g)(1), Gift Tax Regs. Gift taxes are imposed based not on the subjective intent of the transferor but on the objective facts of the transfer and the circumstances under which it is made. Commissioner v. Wemyss, 324 U.S. 303, 306 (1945); sec. 25.2511-1(g)(1), Gift Tax Regs. Respondent argues the transfers in the case at bar constituted gifts because they were made for zero consideration in money or money's worth. Respondent opines the transfers were gifts by decedent to the full extent of the properties' fair market values. Petitioner argues decedent made the subject transfers for full and adequate consideration. First, petitioner asserts Herbert Muhammad contributed more than $ 300,000 towards the purchase of the properties and *239 construction of the houses in question. Petitioner asserts it was in exchange for this contribution decedent transferred the deed to the property located at 1136 East 49th Street to Herbert Muhammad. With respect to the other three properties, petitioner asserts the consideration decedent received was the recipients' performance of past and future personal services. We agree with respondent with respect to the property at 1136 East 49th Street. Petitioner asserts Herbert Muhammad paid decedent $ 300,000 as compensation for the property he received. However, petitioner's assertion is not supported by the record. First, there is no evidence in these cases showing decedent was paid $ 300,000 by Herbert Muhammad. The only evidence petitioner offered on this issue is Herbert Muhammad's own uncorroborated testimony. [2] *241 Further, even if we were to find Herbert Muhammad paid $ 300,000 to decedent, there is no evidence to show when such money was paid. Finally, even if we were to find $ 300,000 was paid at or near the time the property was transferred to Herbert Muhammad, there is no evidence in the record to establish this money was paid as consideration for the property at 1136 East *240 49th Street, rather than as a contribution to the Nation or a gift to decedent. Without any evidence more persuasive than the testimony of Herbert Muhammad, and in the absence of any evidence corroborating Herbert Muhammad's assertions, we are left unpersuaded respondent's determination is incorrect. Accordingly, we find a gift was made by decedent to Herbert Muhammad of the property located at 1136 East 49th Street on July 12, 1974. The amount of this gift equals the property's fair market value on the date of transfer, $ 120,000. As to decedent's transfer of the houses located at 1158, 1150, and 1144 East 49th Street, we are similarly unpersuaded by the evidence petitioner presented. Respectively, those transfers were to Raymond and Ethel Sharrieff, Elijah and Patricia Ann Muhammad, Jr., and Sultan Muhammad. While we find some of these people provided services to decedent, we are not persuaded the properties they received were transferred as compensation for those services. Decedent's generosity to his family and other members of the Nation was legendary. Pursuant to the Nation's brochures, "[t]he generosity *242 of [decedent] is so well known that stories are told about his gifts throughout the Nation." On the other hand, the transferees of the properties in question served decedent without any expectation of compensation. Their reward took other less tangible forms, such as the satisfaction they received knowing they rendered services to enhance and protect the life of their father, the Messenger of Master Fard Muhammad, Allah personified. Further, it would have insulted a member of the FOI to offer him payment for his services protecting decedent. Without credible evidence controverting these facts, we are not persuaded the transfers by decedent were not gifts. From the objective facts and circumstances of these cases, we find decedent transferred the properties located at 1158 and 1150 East 49th Street, respectively, to Raymond and Ethel Sharrieff, and Elijah and Patricia Ann Muhammad, *692 Jr., as gifts on July 12, 1974. We further find decedent transferred the property located at 1144 East 49th Street to Sultan Muhammad as a gift on January 10, 1975. The amount of these gifts equals the properties' fair market values on the date of transfer, $ 120,000 each. Respondent asserts these gifts *243 required the filing of gift tax returns. Respondent argues the failure to file gift tax returns was unreasonable, the result of willful neglect, and subject to the addition to tax under section 6651(L)(1). Petitioner asserts any failure to file gift tax returns was the result of reasonable cause. Thus, petitioner asserts, this addition to tax is inapplicable. For gifts made prior to 1982, taxes were computed and reported on quarterly returns the due dates for which were May 15, August 15, November 15, and April 15. Sec. 6019(a) and sec. 6075(b). If quarterly gift tax returns were not timely filed, an addition to tax under section 6651(a)(1) was imposed unless the taxpayer established the failure to file was due to reasonable cause, not willful neglect. Sec. 6651(a)(1); Reynolds v. Commissioner, 55 T.C. 172, 203 (1970). We find the failure to file gift tax returns in these cases was not the result of willful neglect. Further, we find it was not unreasonable for decedent to believe the transfers at issue were not gifts. Because the failure to file gift tax returns resulted from this belief, and not wilfull neglect, we hold the addition to tax under section 6651(a)(1) does not apply *244 in these cases. Finally, respondent asserts the subject gifts were made in contemplation of death. Accordingly, respondent argues, the fair market value of the properties transferred must be included in the value of decedent's gross estate. Petitioner argues the gifts were not made by decedent in contemplation of death and are not includible in decedent's gross estate. Because decedent's gifts of the properties at issue were made within three years prior to decedent's death they are presumed to have been made in contemplation of death. Sec. 2035(b); Estate of Himmelstein v. Commissioner, 73 T.C. 868, 871 (1980). Unless petitioner can rebut this statutory presumption, the value of the gifted property is includible in decedent's gross estate. Sec. 2035(a). To meet its burden, petitioner must establish decedent's dominant motive for making the transfers was life-centered rather than based on thoughts of impending death. United States v. Wells, 283 U.S. 102, 118 (1931); Estate of Himmelstein v. Commissioner, 73 T.C. 868, 871 (1980); Estate of Gerard v. Commissioner, 57 T.C. 749 (1972), affd. per curiam 513 F.2d 1232 (2d Cir. 1975). Petitioner has failed to persuade us the statutory *245 presumption does not apply in these cases. Although petitioner originally acquired, and allowed the transferees the rent-free use of, the property at issue for security purposes, there is nothing in the record to support petitioner's assertion security was decedent's dominant concern when giving the property to the recipients. Accordingly, we hold the gifts at issue were made by decedent in contemplation of death and must be included in the value of decedent's gross estate pursuant to section 2035(a) and 2035(b). Decision will be entered under Rule 155 . Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the periods in issue, or as the case may be, in effect on the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless indicated otherwise.↩
2. Petitioner moved to have entered into evidence an affidavit of Hafeezah M. Bahar, decedent's personal financial secretary during the relevant years. The affidavit states in part During the years 1972, 1973, 1974 and 1975 * * * Herbert Muhammad from time to time made substantial money available to his father [decedent]. The funds were more than sufficient to pay for the residence that was constructed for Herbert Muhammad and deeded to him in 1974. The balance of the funds furnished by Herbert Muhammad to [decedent] were used for the purposes of the Nation of Islam. * * * I believe that the total of such payments to [decedent] by Herbert Muhammad totalled in excess of $ 300,000.00. Respondent objected to the affidavit's admission into evidence on the ground it was hearsay. Petitioner asserted the affidavit was being offered into evidence, not to prove the truth of the matter asserted, but for the limited purpose of showing the affidavit was signed by the affiant and filed as part of the petition in these cases. The affidavit, petitioner's exhibit 5, was accepted into evidence for that limited purpose only↩. Thus, the subject matter of the affidavit is not evidence in this case and does not corroborate any of Herbert Muhammad's assertions.